IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARY A. PRESLEY,           )<br>                              )<br>     Plaintiff,             )<br>                              )<br>v.                            )<br>                              )<br>JO ANNE B. BARNHART, Commissioner )<br>of Social Security,         )<br>                              )<br>     Defendant.             ) | CIVIL ACTION NO. 2:04CV1132-SRW<br>(WO) |

**MEMORANDUM OF OPINION**

Mary A. Presley brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income (SSI) under the Social Security Act.  The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On August 27, 2002, plaintiff filed an application for disability insurance benefits and SSI.  On April 22, 2004, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing.  The ALJ rendered a decision on July 22, 2004.  The ALJ concluded that plaintiff suffered from the severe impairment of "mild mental retardation." (R. 22).  He found that plaintiff's impairments, considered in combination, did not meet or equal the severity of any of the impairments in the "listings" and, further, that

plaintiff retained the residual functional capacity to perform her past relevant work. Thus, the ALJ concluded that the plaintiff had not been disabled within the meaning of the Social Security Act since the alleged onset date. On September 24, 2004, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The plaintiff challenges the Commissioner's decision, arguing that the ALJ's decision

is not supported by substantial evidence because: (1) the ALJ misapplied the requirements for determining whether or not an impairment is severe; (2) the ALJ erred in finding that plaintiff's impairments did not meet or equal the requirements of Listing 12.05C; and (3) the ALJ erred in rejecting plaintiff's subjective complaints.

### Severe Impairments

In his step two analysis, the ALJ found that plaintiff suffered from the "severe" impairment of mild mental retardation. However, he found no other physical or mental impairment which was "severe" and which met the 12-month durational requirement. He stated,

> The undersigned also considered hypertension, degenerative joint disease of the lower back, hypercholesterolemia, ulcers, and obesity and has determined that they were not "severe" impairments during the period of adjudication for a period of 12 full months. Furthermore, the claimant had not provided sufficient evidence associated with these conditions to establish that they entailed significant work-related limitations that would have persisted for 12 consecutive months during the period under adjudication. Of importance in making this determination is the fact that no treating or examining physician placed any definable work-related restrictions on the claimant as a result of any of the above-enumerated conditions. As set forth and discussed herein, such conditions entailed minimal findings, responded to treatment, and/or gave no indication of producing work limitations.

(R. 18).[1] Plaintiff argues that plaintiff "suffers from other severe impairments, including degenerative joint disease of the lower back, hypertension, anemia, hypercholestolemia,

---

[1] Plaintiff notes that the ALJ failed to address whether her anemia was "severe." However, there is no evidence that plaintiff's anemia persisted beyond August 27, 2002, the beginning of the period under consideration. See R. 157 (Dr. Stewart's office note dated 7/1/02 and stating, "Her anemia is also presently under control.").

3

ulcers, and obesity, which more than minimally affect her ability to perform substantial gainful activity." (Doc. # 9, p. 13).

"[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). However,

> a diagnosis alone is an insufficient basis for a finding that an impairment is severe. The severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). Objective medical evidence must confirm that the impairment is severe. See SSR 96-3p.

Sellers v. Barnhart, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002)(footnote omitted).

With regard to degenerative joint disease, the only objective medical evidence of this impairment is an x-ray obtained during a consultative examination in August 2001 which showed "mild spurring at L3 and L4" and was "consistent with early degenerative joint disease of the lumbosacral spine." (R. 119). The consultative examiner, Dr. Patrick Bynum, stated, "[a]s far as her back is concerned, she does have some very mild arthritis of her lower back. However, she has very good flexibility of her back and seems to have good strength of her lower extremities." Id. In December 2001, plaintiff's treating physician, Dr. Stewart, noted that plaintiff's "back only bothers her occasionally." (R. 160). Plaintiff told a disability examiner, in October 2002, that she "gets a pain in her back – about mid back – about one time a month." (R. 97).

4

> Plaintiff's obesity is documented in the record. However,
>
> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (*e.g.*, "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

SSR 02-1p, 2000 WL 628049 at * 4. "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Id. The ALJ is to evaluate each case based on the information in the case record. Id. In August 2001, when Dr. Bynum noted very mild arthritis and a full range of motion in plaintiff's back, plaintiff's weight was 301 1/2. (R. 118). In December 2001, when Dr. Stewart noted that plaintiff's back bothered her only occasionally, plaintiff weighed 287 pounds. (R. 160).[2] The medical record does not reflect that plaintiff's obesity resulted in significant physical limitations or that it increased her back or other impairments to a "severe" level. In September 2002, one month before she told the disability examiner that she had back pain once a month, plaintiff weighed 285 pounds. (R. 155).

Plaintiff's diagnosis of hypertension is also well-documented in the record. However, in March 2000 and again in July 2002 – just prior to the start of the period at issue in this case – Dr. Stewart noted that plaintiff experienced no end organ symptoms attributable to her

---

[2] Four months later, Dr. Stewart noted that plaintiff's back pain is "chronic" and that she had been seen in the emergency department for back pain. (R. 159). The court notes that "chronic" pain may also be occasional.

hypertension. (R. 157, 166).[3] Plaintiff was also treated for high cholesterol. The court has found no evidence in the record that this impairment caused any work-related limitations.

While plaintiff was under the care of Dr. Stewart, he noted that she "has a history of what she calls ulcers." (R. 165). She first complained of abdominal pain, noted by Dr. Stewart to be "primarily epigastric," on May 12, 2000. Dr. Stewart treated plaintiff with Prilosec. (R. 165). On March 29, 2001, he noted that "[h]er GI symptoms have all but resolved." (R. 164). On December 4, 2001, Dr. Stewart again noted that "her reflux has resolved." (R. 160). On March 4, 2002, plaintiff was treated in the emergency room for abdominal pain. She reported a two-week history of abdominal pain "in the right upper quadrant, as well as in the epigastric region," and noted that this pain radiated to her back. She indicated that the pain had been "quite severe" and that "it interferes with her sleep." The ER physician noted that plaintiff had been admitted a year previously with a similar complaint. (R. 121). Plaintiff "was given a GI cocktail which was effective in relieving some of her pain," and the diagnosis was "abdominal pain, rule out gastritis verses [sic] peptic ulcer disease," hypertension with poor control and obesity. She was discharged on Zantac and referred back to Dr. Stewart. (R. 122-23).

---

[3] Plaintiff submitted evidence to the Appeals Council that, on July 20, 2004, she reported to the Evergreen Medical Center complaining of dizziness, headaches, fatigue, slurred speech, and "staggering." During the ER visit, her blood pressure was recorded at 250/120. She reported that she had been off of her blood pressure medications for one year. Her diagnosis was "accelerated hypertension." (R. 175-76). This evidence was not before the ALJ, and the plaintiff does not argue that it meets the "new evidence" standard for remand. In any event, this acute episode of accelerated hypertension does not demonstrate that plaintiff experienced work-related limitations for the requisite duration as a result of her hypertension.

On September 3, 2002, plaintiff complained to Dr. Stewart of nocturnal chest discomfort and dyspnea. Dr. Stewart noted that plaintiff "has a history of reflux, but her symptoms are under control. I have never scoped her. She has been controlled with an H2 blocker (Zantac). She has nocturnal awakening due to dyspnea, but she is able to sleep on only one pillow." Dr. Stewart's diagnoses included GERD. Dr. Stewart decided to "maximize [plaintiff's] antireflux therapy with Prevacid 30 b.i.d. to replace Zantac." Plaintiff's next and last office visit with Dr. Stewart was on January 30, 2003 – there is no mention of reflux in the treatment note. The record before the ALJ included no treatment by any source after January 30, 2003.[4] The ALJ's determination that plaintiff had failed to establish that her other impairments were not "severe" impairments during the period of adjudication for the requisite duration is supported by substantial evidence.

## Listing 12.05C

For a claimant to be found disabled under any part of Listing 12.05, she must have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" and, in addition, meet one

---

[4] At the hearing in April 2004, plaintiff testified that she had not been to a doctor since August 2002, when she moved to Alabama, because she could not afford to seek medical treatment. Although plaintiff stated that she needed medication for her "bleeding ulcer, " she did not testify regarding the nature of any reflux symptoms she may have experienced after her last visit to Dr. Stewart in January 2003. (R. 197-98). The ALJ offered plaintiff's attorney an opportunity to conduct follow-up questioning; however, he declined to do so. (R. 199). The court acknowledges that plaintiff may have suffered symptoms after she ceased taking medication for reflux. However, there is no evidence in the record that, during the relevant time period, plaintiff suffered symptoms from her GERD of sufficient intensity, frequency or duration to establish that her impairment imposed work-related limitations.

7

of the four requirements described in subparagraphs A through D.  <u>See</u> Listing 12.00A. Listing 12.05C requires "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." The standard for an "additional and significant" limitation is the same as for a "severe" impairment under 20 C.F.R. 404.1520(c).[5]

In considering whether plaintiff met Listing 12.05C, the ALJ determined that she has the requisite IQ scores to satisfy the listing. (R. 19; <u>see also</u> R. 116 (WAIS-III testing during consultative psychological examination demonstrated verbal IQ of 66, performance IQ of 65 and full scale IQ of 63)). However, he determined that she did not meet or equal the listing because she "has not been found to have another impairment, either physical or mental, that imposed additional and significant work-related limitations." (R. 19). As noted above, this determination is supported by substantial evidence. Thus, the ALJ did not err in finding that plaintiff's impairments did not meet or equal Listing 12.05C.

---

[5] Under earlier versions of the regulation as interpreted by the Eleventh Circuit, the "additional and significant" standard was lower than the "severe" standard.  <u>See</u> <u>Edwards v. Heckler</u>, 755 F.2d 1513, 1515-16 (11th Cir. 1985); <u>see also</u> <u>Davis v. Shalala</u>, 985 F.2d 528, 531-32 (11th Cir. 1993).  However, the Commissioner has since modified introductory paragraph 12.00A and Listing 12.05C to clarify that the additional physical or mental impairment must be "severe." <u>See</u> 65 Fed. Reg. 50,746 at 50,754 (Aug. 21, 2000)("In final listing 12.05C . . . we used the word 'an' before the word 'additional' to clarify that the additional impairment must be 'severe' in order to establish 'an additional and significant work-related limitation of function."); <u>id</u>. at 50772 ("We have always intended the phrase [significant work-related limitation of function] to mean that the other impairment is a 'severe' impairment, as defined in §§ 404.1520(c) and 416.920(c). . . . Therefore, . . . we revised the fourth paragraph of final 12.00A, which explains how we assess the functional limitations of an additional impairment under listing 12.05C.").

Plaintiff's Subjective Allegations

In the Eleventh Circuit, a claimant's assertion of disability through testimony of pain or other subjective symptoms is evaluated pursuant to a three-part standard. "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The standard also applies to complaints of subjective conditions other than pain." Holt, *supra*, 921 F.2d at 1223. If this standard is met, the ALJ must consider the testimony regarding the claimant's subjective symptoms. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). After considering the testimony, the ALJ may reject the claimant's subjective complaints. However, if the testimony is critical, the ALJ must articulate specific reasons for rejecting the testimony. Id. The reasons articulated by the ALJ must be "explicit, adequate, and supported by substantial evidence in the record." Preston v. Barnhart, 2006 WL 1785312, *1 (11th Cir. Jun. 29, 2006)(unpublished opinion)(citing Hale v. Bowen, 831 F.2d 1007, 1011-12 (11th Cir. 1987)). "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).[6] "The credibility determination does

---

[6] See also Social Security Ruling 96-7p, 61 Fed. Reg. 34483-01 (July 2, 1996):

not need to cite "'"particular phrases or formulations'" but it cannot merely be a broad rejection which is "'not enough to enable [the court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'"'" Dyer, *supra*, 395 F.3d at 1210 (citations omitted).

Plaintiff testified that she cannot read and can write only her name. (R. 189-90). With regard to her physical limitations, she stated that she cannot bend and cannot do "too much" lifting because of lower back pain. She asserted that she can stand only for "a minute" before she has to sit and rest. She can walk about one block and gets out of breath. She goes to the grocery store with a friend. She can do a little bit of cleaning. She cooks her meals herself. She sits in her backyard and goes fishing with a friend. (R. 190-93). Her two youngest children, aged 16 and 13, were taken from her custody by the welfare department in Mississippi. (R. 188, 195).

In rejecting plaintiff's testimony, the ALJ relied, in part, on plaintiff's activities of daily living. He noted that "[s]he reported cooking meals that took up to 1 1/2 hours to

---

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

complete, doing laundry, mopping, washing dishes, shopping, and going fishing with a friend. Her friend reported that they fished as often as twice a week." (R. 20).

In October 2002, a disability examiner spoke with plaintiff on the telephone. In her note, the examiner states:

> Mrs. Presley called – she stated she gets a pain in her back – about mid back – about one time a month. She gets the pain at night after she does her household chores. She is sore at night. She does all of her own cleaning – sweeping, mopping, laundry + dishes. She does not walk with a limp, does not use a cane or crutch. She stated she has to bend to pick up laundry and bend to the point her hands are even with her knees.

(R. 97). Plaintiff's friend stated that she and plaintiff go fishing two times a week and that they go out for other entertainment activities once a month. (R. 94). The ALJ concluded that plaintiff's level of activity is inconsistent with allegedly disabling back pain. With regard to her mental limitations, the ALJ stated, "The claimant's 'severe' impairment of mild mental retardation has been a life-long condition and was present prior to the alleged disability onset date. The fact that the impairment did not prevent the claimant from working at [sic] the past strongly suggests that it would not currently prevent work." (R. 20).[7]

---

[7] The ALJ also noted that plaintiff was caring for her daughter without assistance at the time she filed her application, "which can be quite demanding both physically and emotionally." (R. 20). Plaintiff argues that the fact that plaintiff's children were taken from her custody suggests that she could not care for her daughter in an acceptable manner. (Doc. # 9, p. 14). The only evidence of the reason for the custody determination is indirect and is in the consultative psychiatric examination conducted by Dr. Else B. Tracy on January 15, 2003. The report states:

> She was told that I had some info from the DHS. She tells me in response that neighbors reported that Mary's boyfriend tried to have sex. Mary says she was working at Gulf City Fisheries at the time. Boyfriend sent to jail. She relates that Janice and Kimberly [plaintiff's daughters] deny these charges "nothing went on." She feels the neighbors were trying to stir up trouble.

The ALJ erred to the extent he relied on plaintiff's noncompliance with medication, since plaintiff testified that she could not afford medical treatment to get her medications and the ALJ made no finding to the contrary. However, on the facts of the present case, this is not reversible error, as the ALJ's determination that plaintiff is not disabled "was not significantly based on a finding of noncompliance." See Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). In the present case, the medications which plaintiff was taking at the time of her application were for treatment of GERD, high blood pressure, and high cholesterol. (R. 73). There is no indication in the record that these impairments, with or without medication, caused any work-related limitations.

The court concludes that the ALJ's credibility determination is supported by substantial evidence.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be AFFIRMED. A separate

---

> In response to my questions about the girls not going to school, she tells me she was working at that time, had to be at work at 7 a.m., and though the girls were up and she would get them ready for school, they would not go, and Mary just did not know.
>
> Mary does not agree that her daughters hair was uncombed, and the clothes were clean[], and as far as pads were concerned, she does buy them, and it is not true what the girls said, and also thinks her daughter would not carry the pads to school, when she was on her period.

(R. 151). This evidence does not discredit the ALJ's conclusion that plaintiff's mental limitations do not preclude her from working, or his determination that she was able to physically care for her child.

judgment will be entered.

Done, this 27th day of September, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE